# Richmond.

## WILLIAMS'S ADMR. V. NEWMAN, RECEIVER.

### NOVEMBER 29, 1896.

1. CHANCERY JURISDICTION—*When a Bill of One Creditor Becomes a General Creditor's Bill—"Law of the Land"—Res Judicata.*—Courts of equity have jurisdiction for the purpose of settling estates of decedents and ascertaining and adjusting the liabilities of sureties, and their equities among themselves. And though the bill be filed by a single creditor suing on behalf of himself only, yet, if a decree be entered convening all the creditors, and directing the statement of proper accounts, the bill is thereby converted into a general creditor's bill from the date of such decree, and carries with it all the incidents and consequences of a technical creditor's bill. Settlements made in such suits are made in accordance with the law of the land. This question was determined by the former appeal in this cause and is *res judicata.*

2. "DUE PROCESS OF LAW"—*Case at Bar—How Several Claims Against a General Receiver Proved in Suit to Settle His Estate and Adjust Liabilities of his Sureties.*—In order to constitute " due process at law " it is necessary that the court should have jurisdiction, and that some recognized and accustomed mode of procedure be pursued. In addition to this, the complaint must be preferred by the proper party and against the proper party, and in such manner that the defendant may avail himself of all just defences permitted him by the law of the land. In a suit to settle the estate of a general receiver of a court, and to adjust the liabilities of his sureties, it is not sufficient to state the amounts due by such receiver in numerous chancery causes in the names of such causes, nor in the name of a special receiver in each of such causes, even though a memorandum of the proceedings in each of said causes and a statement showing how the amount claimed was arrived at, be filed before the commissioner who takes the account, and answers thereto be filed by such sureties and the personal representative of the general receiver. This is not " due process of law," because it does not afford the defendants an opportunity to make an intelligent defence to the demands against them.

The claims should either be preferred in the names of the persons beneficially interested in the fund, or the accounts of the general receiver should be settled in the several chancery suits in which he was receiver, and a special receiver there appointed to prove the balances thus ascertained in the general suit.

Argued at Staunton. Decided at Richmond.

Appeal from several decrees of the Circuit Court of Shenandoah county, pronounced in a suit in chancery wherein appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The general receiver of the court had collected funds in numerous chancery suits for which he and his sureties were liable, and it was sought in this suit to recover of his representative, and his sureties as receiver, the balances due by him. The bill in this case is not copied into the record, and, with a few exceptions, none of the proceedings except those " subsequent to the former appeal." It appears, however, that the suit was brought by one creditor suing on behalf of himself only, and that the bill became a general creditor's bill by virtue of an order for appropriate accounts. E. D. Newman was appointed a special receiver in a number of chancery causes " to take charge of and collect in his name as such receiver all outstanding funds paid into court in said causes."

While this cause was before the commissioner to take an account of debts against the estate of the general receiver and his sureties, Newman laid before him his authority as receiver in each cause, and the evidence of the amount claimed therein. The commissioner reported the amounts as due under the style of the several causes. On exceptions filed, the report was recommitted, and the court suggested that " it would be better to require said receiver,

or the parties making claim to said funds, to file a brief statement of the character of their claim before the commissioner, to which said defendants have leave to file a reply in writing." Acting on this suggestion, the special receiver filed the brief statement showing the proceedings in the several causes, and the amount claimed by him in each, and how the amount was arrived at. To these statements the defendants filed their answers, and the commissioner reported the balances found by him as so much due to E. D. Newman, special receiver in the particular case. To this report the defendants excepted, their exceptions were overruled, and they appealed. The other facts appear in the opinion.

*John J. Williams* and *Barton & Boyd*, for the appellants.

*Walton & Walton* and *J. E. Roller*, for the appellees.

KEITH, P., delivered the opinion of the court.

This is the sequel to the case of *Walton* v. *Williams*, reported at page 280 in the Virginia Law Journal for 1886, Vol. 10.

The suit was originally instituted in the Circuit Court of Shenandoah county by Catharine Walton and others, creditors of Samuel C. Williams, to enforce demands against his estate as receiver of the Circuit Court of Shenandoah county, and the sureties upon his several bonds as such were made co-defendants with him. As far back as June, 1872, a decree was entered referring the cause to a commissioner, who was directed "to ascertain the amount, character, and relative priorities of the debts and liabilities of the estate of the late Samuel C. Williams of every kind."

In this suit a number of decrees were entered and the case was finally brought to this court, where it was heard and determined at the January term, 1886. This court,

passing upon the several assignments of error, held that a
court of equity had jurisdiction; that the several bonds
given by the receiver are cumulative securities for his official
conduct, taking effect from their respective dates, and that
the bill should be treated as a creditor's bill. Several other
matters were disposed of, which need not be adverted to. The
cause was remanded to the Circuit Court for further pro-
ceedings to be had in accordance with the opinion and de-
cree of this court.

On September 6, 1886, a decree was entered, which pro-
vides, among other things, "that a commissioner state,
settle, and adjust the accounts of Samuel C. Williams, late
receiver of this court, for moneys that came into his hands
as such to which the complainants in this cause, who were
the appellants in the Court of Appeals, and others who have
and may, by petition or otherwise, legally come into this
cause and thereby agree to share its costs, may be entitled,
and thus assert their claims, and the said commissioner will
state said account upon such evidence as may be presented
to him."

In pursuance of this decree, the commissioner filed his
report, in which he charges the estate of Samuel C. Wil-
liams with certain sums alleged to have been received by
him in chancery causes in which Williams had been ap-
pointed as special receiver.

By a consent decree of September 8, 1888, the cause was
recommitted to the commissioner, who returned a further
report; and, in August, 1890, the case was heard upon the
reports and exceptions thereto, and other papers in the cause,
and the court, overruling certain of the exceptions and sus-
taining others, directed that so much of the account as au-
dited the debts of *Hupp* v. *Gilleece* for $5,891.70, *Crawford* v.
*Gaw* for $6,591.25, *Painter* v. *Hollar* for $1,369.40, *Dinges* v.
*Dinges* for $2,488.33, and *Harper & Baldwin* v. *Schmitt* for
$1,472.25 "be excluded from the commissioner's report and
accounts as improperly audited in that form and style."

The exceptions as to the allowance of the sums just enu-
merated were sustained, as appears from the opinion of the
learned judge who entered the decree, because they were
audited "simply in the style of the original suit in chancery
in which the fund was received. The demand ought to have
been preferred in the names of the parties interested, or in
the name of the receiver appointed in the original cause to
collect the fund in the hands of the receiver."

The case was sent back to the commissioner to restate the
account in accordance with the decree of the court. On the
19th of January, 1893, the cause came on again to be heard
upon the report of the commissioner of the 11th of Novem-
ber, 1892, and exceptions thereto, and on motion of the de-
fendant to rehear the decree of August 15, 1890. The court
overruled the motion to rehear, but, being "of opinion that
in order to present more clearly and distinctly the merits
of the controversy arising on the various demands audited
by the said commissioner in the name of the special receiver
in the several causes therein, except those confirmed by the
decree of August 15, 1890, it would be better to require the
said receiver, or the parties making claim to said funds, to
file a brief statement of the character of their claim before
the commissioner, to which said defendants may file a reply
in writing," recommitted the report to the commissioner,
with instruction to reconsider the same and the exceptions
thereto in connection with the statement of claims and an-
swers thereto, and any other evidence which might be pre-
sented. Under this decree the commissioner again reported
on May 11, 1895, and to this report the defendants excepted,
which exceptions in the main reiterate the exceptions taken
to the former report. The case came on to be heard on the
16th of July, 1896, and a decree was entered, and the ap-
pellants applied for and obtained an appeal and supersedeas
from this court.

The exception to the allowance of the claims audited in

the name of the receiver rests upon the proposition that these claims are not presented in accordance with the "law of the land" as it has hitherto been understood and practiced, and that to enter a decree against the defendants, upon the case as it appears in this record, would be to deprive them of their property without "due process of law."

The first objection assigned is that a court of equity is without jurisdiction, and that a court of law is the proper forum in which to implead the defendants. In this view we cannot concur. Without going into a discussion of the general question, it is sufficient here to say that, from a time antedating the adoption of our present system of government, equity has taken jurisdiction over such controversies, and in that tribunal the law of the land has been administered in the settlement of the estates of decedents, and in ascertaining and adjusting the liabilities of sureties and their equities among themselves. Moreover, this point was decided when the case was formerly in this court. It was expressly adjudged that equity had jurisdiction over the matters in controversy, and that the bill was a creditor's bill. If it were an open question, we should not perhaps feel inclined to pronounce the bill as filed a creditor's bill, but it is well settled that a suit in chancery, brought by one creditor against the estate of a decedent, although filed on behalf of himself only, may, by decree convening all the creditors and directing the statement of proper accounts, be converted into a general creditor's bill, and from the date of such a decree it will be considered, and will carry with it all the incidents and consequences attending the filing of a technical creditor's bill. See *Duerson's Adm'r* v. *Alsop*, 27 Gratt. 229; *Piedmont & Arlington Ins. Co.* v. *Maury et als.* 75 Va. 508. It is sufficient for this cause, however, that it was so held when the case was in this court upon the former appeal. To constitute due process of law it is necessary that the court should have jurisdiction, and that some recognized

and accustomed mode of procedure should be pursued, and these, as we have seen, are presented in this case.

The cause is before the proper court, and is presented in a creditor's bill. But these requisites standing by themselves are not sufficient. The complaint must be presented by the proper party, and against the proper party. The plaintiff must set out his cause of action so that the defendant may avail himself of all just defences permitted to him by the law of the land. We take it that it was for the want of this essential ingredient that the learned judge of the Circuit Court sustained the exceptions to the commissioner's report by the decree rendered August 15, 1890.

As we have seen, certain claims were audited against the estate of the receiver in the name of the cause in which the receiver had been appointed, as for example " *Crawford* v. *Gaw* " $6,591.25. The Circuit Court was of opinion that this debt was not properly "audited in that name and style," manifestly for the reason that it did not afford the defendants an opportunity to make an intelligent defence to the demand against them, and so of other claims. Subsequently, these claims were again audited accompanied by direction of the court " by a brief abstract of the proceedings in the various chancery causes in which the special receiver has presented demands." This brief abstract consists of a statement of the money which came into the hands of the receiver prior to 1860, and of the credits to which, in the opinion and according to the information in possession of the receiver, the defendants were entitled. When it is recalled that in the case of *Crawford* v. *Gaw*, there may have been, and probably were, many individuals entitled to share in the fund to be recovered and distributed in that suit, it will be apparent that this brief abstract of a demand, prepared in the name of a receiver, not only fails to afford the opportunity, but precludes the possibility of making that intelligent defence to which the defendants may perhaps have been entitled as against the real beneficiaries.

The claims should be preferred in this suit either in the name of those beneficially entitled to the fund, or, if the parties prefer, it would be entirely proper to go into the several chancery causes in which S. C. Williams was ,receiver, and have his accounts as such properly settled, and then direct a receiver to come into this cause to collect the balances thus ascertained to be due from Williams and his sureties. It is true this mode may after this great lapse of time be inconvenient, or indeed impracticable, but the courts have been open since 1865. This suit was instituted in 1867, and it would indeed be a hard measure of justice to permit a plaintiff to justify, or to extenuate, a departure in his favor from accustomed modes and forms of procedure because he had slept so long upon his rights that the beaten paths had become difficult, or even impracticable. We think that the Circuit Court was right in its decree of August, 1890, in rejecting the claims audited in the name of a chancery suit, and we do not think the defect is remedied when the name of a receiver is superadded to that of a cause, nor that the "brief abstract" filed by him affords to these sureties such an opportunity to make their defence as is guaranteed to them by the "law of the land."

The decree appealed from provides that "No money shall be paid to E. D. Newman, special receiver, in the several chancery causes in which money had been decreed to be paid to him, until the court, by decrees in said several chancery causes, shall have determined what, if any, money shall be paid to the parties claiming and entitled to the same in said several chancery causes, but as each claimant establishes his claim and obtains a decree for money, the said special receiver is authorized to collect and pay over the same."

This extract from the decree, when read in connection with other portions of it, seems obscure, but we take it to mean that, while the amount of the recovery against the

sureties is ascertained by the decree, the receiver is not entitled to enforce it against them until the beneficiaries for whom the receiver is acting have established their demands by litigation conducted in the original suits.   This seems to reverse the proper order.   A decree for money which will certainly be embarrassing and injurious, if not wholly ruinous, should not be rendered against any party until it has been judicially determined that he withholds from those demanding it that to which they are of right entitled.   There can be no propriety in rendering a decree in favor of a receiver which is to serve as a security to answer the results of litigation which may show that the supposed beneficiaries of the fund which the receiver seeks to recover, and for which a decree in his favor is rendered, are entitled to nothing whatever.   This would be true as against the estate of S. C. Williams, the principal, but the hardship is the more apparent when it is considered that the principal is insolvent and the entire burden falls upon innocent sureties.

The views here presented are not at all opposed to the practice sanctioned in the cases of *Corbin and others* v. *Mills and others*, 19 Gratt. 438, and *Leake* v. *Leake,* 75 Va. 792.   In those cases it was said that while the settled accounts of fiduciaries are liable to be impeached on specified grounds of surcharge and falsification to be alleged in the bill, the court will not decree a restatement of the account on a general allegation that the settled accounts are erroneous.   The bill, as filed, must specify the grounds of surcharge and falsification, and then the court says: "When an account has been ordered upon a proper bill, an additional objection to the settled accounts may be discovered in the progress of the case.   It would be attended with inconvenience and delay to require the plaintiff in such case to amend his bill for the purpose of alleging the additional objection.   It will save time and expense, and generally be attended with no inconvenience, to allow the plaintiff to raise the objection by an

affidavit, giving to the affidavit the same weight which would have been given to an answer if the matter had been alleged in the bill. This is the full extent to which the settled rule of practice can be safely and conveniently relaxed."

In such a case not only does the original bill present a distinct cause of action by the plaintiff against the defendant, stated with the certainty required in chancery pleading, but the additional objections introduced before the commissioner must be stated with the same precision as to parties and subject matter as though they had been known to the plaintiff when the bill was filed, and had been therein set forth. The court seems to have felt that it was approving an innovation upon established modes of procedure when, for the sake of convenience, it allowed new matter to be introduced in the manner just set forth, without requiring a formal amendment to the bill, and is therefore careful to add " that this is the full extent to which the settled rule of practice can be safely and conveniently relaxed."

For the foregoing reasons we are of opinion that the decrees appealed from should be reversed, and this court will proceed to enter such decree as the Circuit Court should have rendered.

*Reversed.*